NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE FIRST CIRCUIT

---

**BAP No. MB 99-056**

---

**IN RE: TOWN & COUNTRY FINE JEWELRY GROUP, INC.
GL, INC. and LGB, INC.,**
**Debtors.**

---

**MICHAEL ANTHONY JEWELERS, INC.**
**Appellant,**

**v.**

**TOWN AND COUNTRY FINE JEWELRY GROUP, INC.,**
**Appellee.**

---

**Appeal from the United States Bankruptcy Court
for the District of Massachusetts (Eastern Division)
(Hon. William C. Hillman, U.S. Bankruptcy Judge)**

---

**Before
GOODMAN, HAINES and CARLO, U.S. Bankruptcy Judges.**

---

John A. Gleason and Benesch, Friedlander, Coplan & Aronoff, LLP on brief for Appellant.

Charles R. Dougherty, Anne L. Showalter, and Hill & Barlow on brief for Appellee.

---

**February 9, 2000**

---

**Per Curiam.**

Michael Anthony Jewelers, Inc. appeals the June 28, 1999, order of the United States Bankruptcy Court denying its motion to require the debtor, Town and Country Fine Jewelry Group, Inc., to pay it a break-up fee as a consequence of an unconsummated sale of substantially all of Town and Country's assets. Its asks that we reverse the bankruptcy court and remand the matter with instructions that the court order payment of the $300,000 break-up fee as an administrative claim. Alternatively, it asks that we remand for an evidentiary hearing. We take the latter track.

## The Dispute

### A. Procedural History

On February 3, 1999, Town and Country, a Chapter 11 debtor, filed an emergency motion to sell substantially all its assets pursuant to § 363(b) and (f). On the same day it filed an emergency motion for an order "Establishing Bidding Procedures and Approving a Break-up Fee in Connection with the Sale of Substantially all the Debtor's Assets." The court granted the debtor's motion for an expedited hearing on the motions.

On February 16, 1999, the court signed an order "Establishing Bidding Procedures and Approving a Break-Up Fee in Connection with the Sale of Substantially all the Debtor's Assets." The order included a paragraph, now pivotal, stating:

A break-up fee is approved in the amount of $300,000, payable to Michael Anthony Jewelers, Inc., as liquidated damages for Michael Anthony's time, expenses, financing efforts and lost opportunities, in the event that the transactions contemplated by the Asset Purchase Agreement are not consummated in accordance with the terms thereof, other than as a result of the breach by Michael Anthony (including termination pursuant to Section 8.1(e) of the Asset Purchase Agreement, based on a minimum purchase requirement) upon (a) the sale of all or a substantial portion of the Purchased Assets to any one or more person or entity other than the Purchaser (including, but not limited to, pursuant to the Auction or through a liquidation), or (b) the failure of the Debtor to use reasonable efforts to obtain an order authorizing the sale within the time frame specified in the Asset Purchase Agreement.2

Appended to the order is the February 6, 1999, "Asset Purchase Agreement" (APA) between the Town and Country and Michael Anthony.

Paragraph 8.1(e) of the APA provided that the seller/debtor may terminate the agreement prior to the closing date if "the Purchase Price is not at least equal to the Minimum Amount." Section 3.4(h) set the minimum:

The Purchase Price shall be at least Thirty Million Dollars($30,000,000); provided; [sic] however, that (i) such amount shall be reduced on a dollar-for-dollar basis for each Qualified Account Receivable collected by the Seller after the date of this Agreement and prior to the Closing Date, and (ii) if the composition of the inventory as represented by Seller in connection with the Filing is materially different than the actual inventory existing on the Closing Date, then such amount shall be appropriately adjusted (the "Minimum Amount").

The order also set the auction sale for hearing on February 22, 1999.

When the February 22, 1999, hearing convened, the debtor's attorney represented that Michael Anthony was ready to pay

2

$24,500,000;[1] stated that the minimum purchase price was, in the debtor's view, $25,900,000 ($30,000,000 less collections); and explained that there was a qualifying counter-bid by a third party. After wading through a few third-party objections, the debtor requested that the court entertain two sealed bids, "subject to the debtor's reservation with respect to the floor price," and recommended that "the higher of those two bids be accepted as the purchaser under the agreement."

When the court inquired whether any party wanted to be heard on the preliminaries, Michael Anthony's counsel stated,

> Your Honor, I just want to add that regarding counsel's earlier statements, we do reserve the right to disagree with the debtor as to their characterization of the minimum price. We believe that the minimum is different than theirs. We also believe that the balance sheet price is different; however, in order to save the Court time, in order to save all the parties' time we have come to the figure of twenty-four five. <u>However, should it subsequently be determined later that the debtor does not go forward, we do reserve the right to challenge the debtor's characterization of its minimum price</u>. (Emphasis supplied.)

To this the court responded, "Your rights will be preserved."

Shortly thereafter, the court reviewed the sealed bids and announced that Michael Anthony was the high bidder. Following a brief recess, Town and Country's attorney disclosed "the debtor's view ... that the minimum purchase price under the agreement

---

[1]    The transcript states the amount of Michael Anthony's bid variously as $24,500,000; $25,000,400; and $25,400,000. The briefs, however, agree that it was in fact $25,400,000.

adjusted for collections is ... 25.9 million dollars, which is $500,000 more than the high bid."[2] Reckoning that the debtor could realize more than $26,000,000 in a piece-meal liquidation (a process for which the debtor had already laid the ground work) he stated:

> [E]ven though we would much have preferred to bring this thing to a much quicker and cleaner closing by simply going forward with this agreement, we don't think it's the right thing to do, and as a result, we would not be prepared under, as provided for in the agreement, to close at a purchase price of 25.4 million dollars, which in any event would be subject to at least a half a million dollars in potential adjustments under the agreement as stated. So that's where the debtor stands as of today.

The following discourse between the court and Michael Anthony's counsel then took place:

> Attorney for Michael Anthony: Your Honor, we are obviously very disappointed. We believe that our offer was frankly substantially in excess of even what the balance sheet had shown. Nonetheless, I would point out, Your Honor, we believe that under the Court's earlier order issued related to bidding procedures and break-up fee that even under a liquidation scenario, because of the work and the diligence that we have done in order to bring the parties to this point, that we are still entitled to the break-up fee that we had bargained for in the agreement, but we are disappointed that the purchase did not go through.
>
> The Court: I don't believe I agree with you on the break-up fee. I believe that would have been payable if you were overbid as it was that the debtor reserve the right not to sell to anyone [sic], and that is the option the debtor has accepted, and so I don't believe that Michael Anthony is entitled to the break-up fee under the present

---

[2] This statement is consistent with the parties' briefs, each of which indicates Michael Anthony's bid was $25,400,000. See supra n.1.

4

scenario.

Now the question is do I allow this just to go along and let the debtors do their thing now?

The court continued the hearing "with all options left open, including dismissal, conversion, Trustees or whatever nature," with the debtor to return to prosecute its self-propelled liquidation proposal. All pending matters were continued until March 1, 1999. No order entered.

On March 1, 1999, no hearing was held. After a conference in chambers the court entered an order that, among other things, stated:

> The Bidding Procedures Motion is denied without prejudice and all objections thereto ... have been withdrawn or are disallowed as moot;[3] and

> The Sale Motion is denied without prejudice and all objections ... have been withdrawn or are disallowed as moot.

On May 17, 1999, Michael Anthony filed a motion for an order requiring the debtor to pay the break-up fee. This motion asserted that Michael Anthony had been the highest bidder and that its bid satisfied the APA's minimum purchase price requirement. Thus, it argued, under the terms of the February 16, 1999, order it was entitled to the break-up fee. The court held an initial hearing on this motion on June 28, 1999. Michael Anthony argued that it was entitled to the fee because a substantial portion of the debtor's

_____

[3] This provision of the order may be a clerical error. The bidding procedures motion had been granted on February 16, 1999. The docket bears both, dichotomous entries.

5

assets were sold to other parties through the liquidation rather than to Michael Anthony and, since it had met the minimum bid requirements, the debtor had not exerted reasonable efforts to secure court approval of a sale under the APA.

Town and Country countered that Michael Anthony was not entitled to the break-up fee because its bid did not meet the minimum purchase price.[4] It maintained, "the February 16[] order of the Court, which is cited by Michael Anthony, is clear that in the case of a breach, including termination pursuant to Section 8.1(e) of the asset purchase agreement, based on the minimum purchase requirement – based on the failure to meet the minimum purchase requirement, Michael Anthony is not entitled to its break-up fee."[5] The Creditor's Committee also chimed in.[6]

---

[4] In error, the debtor also contended that at the February 22, 1999, hearing Michael Anthony requested the break-up fee but had not argued that it had met the minimum bid. The quoted sections of that hearing, see supra, demonstrate that Michael Anthony twice asserted that its bid met the floor. Indeed, Michael Anthony expressly asked the court to preserve its rights on that score, and the court stated that it would.

[5] The debtor also argued that Michael Anthony had not made a timely motion for reconsideration or filed an appeal of the February 22, 1999, "decision." Michael Anthony argued, correctly, that the court's oral statements – that it did not agree with Michael Anthony assertion that it was entitled to the fee – was not an appealable order. See infra note 6.

[6] It argued that even if Michael Anthony met the minimum bid requirement it was not entitled to the break-up fee because the assets were not sold at auction to a higher bidder. For the proposition that the intent of the parties vis-a-vis payment of the break-up fee was limited to this scenario, the committee quotes language from the February 3, 1999, emergency motion to establish

6

The court gave the following oral disposition:

> I can think of several reasons for denying the motion and none for granting it. The first is the wording of the agreement itself, as detailed by [the attorney for the debtor] in her presentation, which I believe is the correct reading of the contract, would sustain in itself a denial of the motion.[7]
>
> The second is the other issue, and that is we don't know yet what the liquidation sale is going to bring, so we don't know whether it's going to bring more or less; and even if you read the contract the way Michael Anthony would have me read it, that would be a relevant consideration that would determine whether or not the break-up fee were payable.
>
> I do not believe that the transaction contemplated by the agreement which created the break-up fee was the kind of transaction which, in fact, occurred. I believe

_____

the bidding procedures and approve the break-up fee. In requesting a steeper $500,000 fee the motion represented:

> Further, the break-up fee is payable only if the Debtor consummates an alternative transaction, which must be at least $1 million more than the Purchase Price called for under the Letter of Intent. Thus, the break-up fee will only be payable under circumstances where the bidding on the Assets has generated an even greater purchase price – and corresponding benefit – to the estates.

The committee's position overlooks the language of the order issued on February 16, discussed _infra_, that appears to provide for payment of the break-up fee under several scenarios other than a sale closed under the APA's terms, so long as Michael Anthony's bid met or exceeded the "Minimum Amount."

In essence the committee argued that the court ought not dwell on the "legal niceties of the contract" as urged by Michael Anthony, but ought to approach the dispute from the vantage point of the emergency motion and "what everybody saw" was to be the operation of the fee.

[7]   Here the court seems to be referring to the debtor's assertion that Michael Anthony was not insisting that it had met the minimum purchase price and that, since it had not met that price, under the order and the agreement it was not entitled to the break-up fee.

that all of the parties are operating on the premise that there would be an auction and that at that auction the — Michael Anthony would have to outbid before the fee was payable.

Now the problem that we have is that in this unusual addendum to these customary sale procedures, the debtor retained the right to – as [the attorney for the creditor's committee] said, pull the plug and not have the sale at all. I believe that under those circumstance no break-up fee is payable.

Now considering this motion as whatever you want to consider it,[8] this is my determination, and a final determination that no break-up fee is payable. The motion of Michael Anthony Jewelers, Inc. for an order requiring the debtor to pay a break-up fee is denied.

This time a written order issued. From it Michael Anthony now appeals.

### B. Arguments on Appeal

Michael Anthony argues that the bankruptcy court erred when it concluded that the break-up fee was to be paid only if Michael Anthony was out-bid at auction. It also argues that the court erred in not holding an evidentiary hearing on the "factual assumptions" underlying the court's ruling. On this score, if reversal is not forthcoming, it seeks a remand for an evidentiary hearing.

The debtor maintains that the inquiry on appeal should focus only on the terms of the February 16, 1999, order, read in conjunction with § 8.1(e) of the agreement. Skirting around the

_____

[8]    The appellee has not argued that Michael Anthony's appeal was filed untimely and, although substantial time did pass before the court's February pronouncement about what it intended to do and its June order, we do not see how the appeal could be considered untimely. No order entered at the close of the February 22, 1999, hearing and the court expressly continued then-pending matters without prejudice to Michael Anthony's rights.

8

issues raised by the court's alternative holding,[9] the debtor's core contention is that Michael Anthony failed to meet the minimum purchase price, the debtor responsibly terminated the agreement as a result, and the court correctly upheld its right to do so under the APA.  It also argues that § 503 of the Code operates to limit break-up fees to transactions that benefit the estate, that the break-up fee provision could have served this end by generating a competing bid that exceeded Michael Anthony's by more than $300,000, but that no such benefit redounded to the estate given the way that the bids played-out at the auction.  Thus, it asserts that the result below is dictated by law.

## Disposition

Neither party has argued that the terms governing Michael Anthony's entitlement to a break-up fee are ambiguous.  In its present posture, the case has not yet provided them with the opportunity to do so.  Without foreclosing that possibility, the order outlining break-up fee entitlement appears straightforward. Michael Anthony is entitled to the fee if (1) its bid (proffered on February 22, 1999) equaled or exceeded the "Minimum Amount," and (2) the debtor (a) either sold all or substantially all of its assets to one or more parties (via the auction sale or a liquidation) at

---

[9]     The debtor's argument is not sharp with respect to the court's alternate reasons.  It seems to shy away from the position of the Creditor's Committee, echoed by the court, that the break-up fee provision was intended to operate only in the context of an auction in which Michael Anthony was out-bid.

9

a sufficient price or (b) having received a sufficiently high offer, failed to use reasonable efforts to obtain an order authorizing the sale.

Michael Anthony has steadfastly contended that its February 22, 1999, bid met the "Minimum Amount." The debtor contends that it was entitled to terminate its agreement with Michael Anthony (and thereby eliminate Anthony's entitlement to the break-up fee) because its bid was too low.

Somehow, the court's June 28, 1999, order resolved that factual dispute in the debtor's favor without taking evidence. It is no answer to say, as the debtor does here, that Michael Anthony made no offer of proof. It repeatedly requested, and preserved its rights to, an evidentiary hearing where it could demonstrate that its bid met the "Minimum Amount" term under the agreement's formula. Neither the court nor the debtor demanded a proffer. If Michael Anthony is able to show that it met the "Minimum Amount" requirement, thereby precluding the debtor's unilateral termination of its rights, the court may go on to consider whether the other contractual conditions for payment of the fee have been satisfied.

Of course, even if the agreement were not effectively terminated, the court may determine, on evidence, that the debtor's assets ultimately were sold at a price, or in a fashion, that disqualified Michael Anthony from receiving its fee.

There is no more to be said. On the record before us we cannot

10

sustain the lower court's determination that Michael Anthony is not entitled to its fee.   Neither can we conclude that Michael Anthony has demonstrated that it is, as a matter of law, entitled to it.

We therefore VACATE the lower court's order denying Michael Anthony its break-up fee and REMAND the matter to the lower court for further proceedings consistent with our decision.